UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TAMMY NELSON & CALVERT NELSON                                               PLAINTIFF

VS.                                                  CIVIL ACTION NO.: 3:11-cv-223-DPJ-FKB

NATIONWIDE MUTUAL INSURANCE
COMPANY; NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY; UPSHAW, WILLIAMS,
BIGGERS & BECKHAM, LLP; PATRICK M.
TATUM; AND GEORGE BROWN                                                   DEFENDANTS

ORDER

This matter is before the Court on Plaintiffs Tammy and Calvert Nelson's Motion [32] to Reconsider the Court's Order of June 30, 2011. Defendants Upshaw, Williams, Biggers & Beckham, LLP, Patrick Tatum, Nationwide Mutual Insurance Company, and Nationwide Mutual Fire Insurance Company oppose the motion [35, 37].

Awarding sanctions is at times necessary but always unfortunate, and it is only with sober reflection that the Court enters such orders. The Court is equally circumspect in reconsidering the issue. But having fully reviewed the parties' submissions and the relevant authority, the Court finds that sanctions were appropriately granted. The Court did, however, cite the wrong rule. Thus, Plaintiffs' Motion should be granted in part and denied in part.

I.   Background

This case arises out of a dispute concerning a homeowner's insurance policy Plaintiffs Tammy and Calvert Nelson held through Nationwide Mutual Insurance Company ("Nationwide").[1] After the Nelsons made a claim on their home insurance policy, Nationwide

---

[1] Nationwide Mutual Insurance Company issued the homeowner's policy through its subsidiary, Nationwide Mutual Fire Insurance Company. Both entities are referenced collectively herein as "Nationwide."

requested sworn examinations under oath ("EUOs") as provided in the policy. Attorney Patrick Tatum of the Upshaw, Williams, Biggers & Beckham, LLP ("Upshaw") law firm conducted the EUOs in the presence of Nationwide representative George Brown. Nationwide subsequently denied coverage for the Nelsons' claim. The Nelsons then filed suit in the Circuit Court of Hinds County, Mississippi, against Nationwide, Brown, Tatum, and Upshaw, alleging claims of false imprisonment and intentional infliction of emotional distress ("IIED") against all defendants. Plaintiffs further alleged claims of breach of contract, tortious breach of contract, and bad faith refusal to tender insurance proceeds against Nationwide only. Soon after, Defendants Tatum and Upshaw filed a Motion to Dismiss, or in the Alternative, for Summary Judgment and for Attorney's Fees and Expenses in state court. *See* State Court Record [1-1] at 33–76. Sanctions were requested under Rule 11 of the Mississippi Rules of Civil Procedure and section 11-55-5 of the Mississippi Code.

Nationwide removed the case to this Court, arguing improper joinder of Defendants Brown, Tatum, and Upshaw, and Tatum and Upshaw gave notice of their unadjudicated state court motions [15]. The Nelsons moved to remand. On June 30, 2011, this Court entered an Order [30] finding the Nelsons had no reasonable possibility of recovery against Brown, Tatum, and Upshaw, the resident defendants. The Court denied Plaintiffs' Motion to Remand [8] and granted Defendant George Brown's Motion to Dismiss [3] and Defendants Tatum and Upshaw's Motion to Dismiss, or in the Alternative, for Summary Judgment and for Attorney's Fees and Expenses. In the Order, the Court granted Tatum and Upshaw's request for sanctions against the Nelsons' counsel for filing frivolous claims against them. The Nelsons then filed a Motion [32] for Reconsideration of the Court's Order pursuant to Rule 59(e), and Defendants responded in

opposition [35, 37].  The Court has personal and subject matter jurisdiction and is prepared to rule.

II.     Standard

Rule 59(e) of the Federal Rules of Civil Procedure allows a court to alter or amend judgment.  But reconsideration "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Id.* (citing *Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  Instead, "a motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (citations and quotations omitted).

III.    Analysis

    A.  The Nelsons' Motion to Remand, Tatum and Upshaw's Motion to Dismiss or Alternatively for Summary Judgment, and Brown's Motion to Dismiss

Plaintiffs seek reconsideration of the Court's determination that their IIED and false imprisonment claims against Brown, Tatum, and Upshaw were frivolous and subject to dismissal, arguing this was an error of law.[2]  As shown below, they base their position on arguments and evidence that they made, or should have made, prior to the Court's Order.  As

---

[2]Whether Plaintiffs have a reasonable possibility of recovery against Brown, Tatum, and Upshaw impacts the outcome of both the Motion to Remand and the Motions to Dismiss.  *See* Order [30] at 1, 6–9.

3

such, they have not satisfied the requirements of Rule 59(e).  Nevertheless, the Court will examine the additional argument and evidence.

The Nelsons premise their claims on the questions Tatum asked during the EUO.  As noted in the original Order, the Complaint failed to explain which statements were supposedly actionable.  Plaintiffs' responses to Defendants' summary judgment motion and their reply in support of remand offered no additional insight, resting instead on the averments as pleaded.  As such, the Court had little trouble holding that the Complaint failed to state a claim.

Although the Court could have based the dismissal and remand rulings on the insufficiencies found on the face of the Complaint, it decided to further examine the transcript of the EUO.  Such review was permissible based on Defendants' alternative motion for summary judgment and because the averments of the Complaint called for a piercing of the pleadings regarding the motion to remand.  *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).  Although Defendants clearly invoked a summary review, the Nelsons passed on the opportunity to respond with record evidence.  After considering the actual questions asked during the EUO, the Court found nothing but a garden-variety examination and nothing to support the IIED and false imprisonment claims against Brown, Tatum, and Upshaw.

The Nelsons now point to specific statements during the EUO that they allege form the basis of their IIED and false imprisonment claims.  Pls.' Mot. to Reconsider Mem. [33] at 13–18. But these are arguments that could have been made before the Order was entered.  The motion therefore fails to comply with Rule 59(e).  And even if the Nelsons had identified these statements, it would not have changed the result.

To begin with, the Court considered the entirety of the transcripts in deciding the propriety of joining Brown, Tatum, and Upshaw, and found no statements to support the IIED or false imprisonment claims.  Order [30] at 8–9 & n.2.  The Court remains of that opinion.  And the statements the Nelsons now highlight in their brief on the Motion to Reconsider—theoretically the statements they find most troubling—fail to show any actionable conduct.  According to them, Tatum's questions amount to an intentional tort because he delved into their finances and probed the possibility that the Nelsons set the fire at their home.

Looking first to the IIED claim, the Nelsons must show conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (citations omitted).  Here, the policy gave Nationwide the right to take the EUO, and Mississippi law clearly allows inquiry into the very subjects the Nelsons found objectionable.  *See Allison v. State Farm Fire & Cas. Co.*, 543 So. 2d 661, 664 (Miss. 1989) (explaining that insurers have the right to investigate whether insured committed arson and holding that "persons claiming under a policy of insurance . . . should be aware that they are required to respond to all reasonable inquiries and to give all reasonable assistance"); *McPhail v. State Farm Fire & Cas. Co.*, 992 F.2d 325 (5th Cir. 1993) (interpreting Mississippi law and holding that "information about the financial condition of an insured is pertinent to an insurance investigation probing the possibility of arson").  In fact, some courts have held that the failure to provide this information might void the policy.  *See Archie v. State Farm Fire and Casualty Co.*, 813 F. Supp. 1208 (S.D. Miss. 1992).

Nationwide was clearly entitled to investigate the fire loss, especially in light of the fire department's arson finding. It is not outrageous or socially intolerable to ask questions allowed by Mississippi law during a contractually-provided-for EUO the Nelsons agreed to attend. Moreover, the Nelsons fail to cite any relevant authority suggesting that the Court's ruling amounts to an error of law.[3]

As for the false imprisonment claim, the Nelsons were required to show: "(1) detention of the plaintiff; and (2) that such detention was unlawful." *Wallace v. Thornton*, 672 So. 2d 724, 727 (Miss. 1996). Detention requires proof that the defendant employed "force or violence," or that the plaintiff submitted upon "reasonably apprehended force." *Martin v. Santora*, 199 So. 2d 63, 65 (Miss. 1967).

There is nothing on the face of the EUO transcripts to suggest that the Nelsons were held against their will, and they never specifically explained the claim in response to Defendants' dispositive motion. Now, the Nelsons submit Mr. Nelson's affidavit in support of the claim. *See* Pls.' Mot. to Reconsider [33] Ex. D, Nelson Aff. But that affidavit could have been produced before the Court ruled and is not considered new evidence under Rule 59(e).

Even considering the affidavit, it would only weaken the viability of the false imprisonment claim. According to Calvert Nelson, "Because of the intense subject matter of the questions and the nature in which they were asked, my wife and I felt if we tried to end the questioning, we would be arrested by the Jackson Police Department for arson." Nelson Aff. ¶

---

[3]*Continental Casualty Co. v. Garrett* is distinguishable, as the holding there turned on the fact that the alleged conduct took place in the home. 161 So. 753 (1935) ("[W]e are of the opinion that the issue here is to be disposed of *rather* under that line of cases which give particular recognition to actions arising out of violations of the rights of the home.") (emphasis added).

5. First, the subject matter is sanctioned by Mississippi law. *See Allison*, 543 So. 2d at 664. Second, there is no suggestion that Tatum was going to call the police or use any form of force. Third, the Mississippi Supreme Court has explained that "[t]he circumstances merely that one considers himself restrained in his person is not sufficient to constitute false imprisonment unless it is shown that there was a reasonable ground to have believed defendant would resort to force if plaintiff attempted to assert her right to freedom." *Martin*, 199 So. 2d at 65. No such showing has ever been made.

*Mayweather v. Isle of Capri Casino* further highlights the frivolity of the Nelsons' false imprisonment claims. 996 So. 2d 136 (Miss. Ct. App. 2008). There, a casino security officer stood in front of the door while the plaintiff was questioned about a potential theft. The Court found such conduct insufficient to establish a "reasonable apprehension of force" for purposes of a false imprisonment claim. *Id*. at 141. The Nelsons claim falls well short of the accusations in *Mayweather*.

Finally, the Nelsons argue that the Court erred when it stated that allowing the Nelsons' suit to go forward as to Brown, Tatum, and Upshaw "would subject every member of the bar to potential civil liability for merely asking questions in an EUO or perhaps even a deposition," and that "[s]uch a ruling would chill the duty to diligently and zealously represent clients." Pls.' Mot. to Reconsider [33], at 12 (citing Order [30], at 10). According to the Nelsons, the Court created a "new form of absolute immunity for lawyers." *Id.* at 10. The Nelsons raised this same argument in their initial briefing, *see* Pls.' Resp. in Opp. to Motion to Dismiss [25] at 4–6, and the Court remains unpersuaded. Nothing in the Court's Order should be interpreted as expanding judicial privilege or creating an absolute immunity. The point of the Order remains

7

that the Nelsons have not pleaded conduct that would subject the Defendants to claims for IIED or false imprisonment. It is certainly possible that an attorney could engage in extreme or outrageous conduct or use force or violence to detain a witness, but that is not what happened here. Finding liability on the pleaded facts—*i.e.*, for asking questions permitted by contract and common law—would create the concerns the Court identified. For these reasons, the Court declines to reconsider its denial of the Motion to Remand and dismissal of the Nelsons' claims against Brown, Tatum, and Upshaw.

  B. Motion for Sanctions

    1. Rule 11 of the Federal Rules of Civil Procedure

The Nelsons seek reconsideration of the Court's entry of sanctions against their counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure for filing frivolous IIED and false imprisonment claims. Federal Rule 11 provides that an attorney, by presenting a pleading to the Court, certifies to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. . . ." Fed. R. Civ. P. 11(b)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction. . . ." *Id.* 11(c).

  Rule 11(c)(2) provides the procedure by which a party moves for sanctions:

> (2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If

>    warranted, the court may award to the prevailing party the reasonable
>    expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). Strict compliance with the procedures outlined in Rule 11 is mandatory. *In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008).

The Nelsons argue it was an error of law to order sanctions against their counsel because Defendants Tatum and Upshaw "failed to follow the timeline of notice under the 'safe harbor' provision and failed to file a separate motion for sanctions." Pls.' Mot. to Reconsider [33] at 7. Plaintiffs are correct that, in the Fifth Circuit, Federal Rule of Civil Procedure 11 is strictly construed and compliance with the procedures set forth in the federal rule is mandatory. *In re Pratt*, 524 F.3d at 588 ("[W]e have continually held that compliance with Rule 11 is mandatory.") (finding informal notice of sanctions motion via letter does not satisfy Rule 11); *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (reversing imposition of sanctions per Rule 11 where movant failed to serve motion for sanctions on defendants prior to filing, as required by Rule 11).

In this case, Defendants' motion for attorney's fees was not filed "separately from any other motion" as required by federal Rule 11, but was instead included in their Motion to Dismiss, or Alternatively for Summary Judgment. *See* Defs.' Notice of Non-Adjudicated Motions [15] Ex. A. Neither did Defendants serve the Nelsons with a separate motion for sanctions 21 days prior to filing the motion, as required by federal Rule 11(c). Defendants' informal letter notice to the Nelsons' counsel on April 6, 2011 fails to satisfy Rule 11(c). Defs.' Resp. in Opp. to Mot. to Reconsider [35] Ex. B.; *see In re Pratt*, 524 F.3d at 588. Thus, the

9

Court erred in sanctioning the Nelsons' counsel pursuant to federal Rule 11, and that part of the June 30, 2011, Order is hereby vacated.[4]

2. Mississippi Litigation Accountability Act and Rule 11 of the Mississippi Rules of Civil Procedure

The Court's citation to federal Rule 11 was error, primarily because Brown, Tatum, and Upshaw filed their motion in state court and cited Mississippi Rule of Civil Procedure 11 and the Mississippi Litigation Accountability Act (MLAA) (Miss. Code Ann. § 11-55-1 *et seq.*), not federal Rule 11. But vacating the Order for citing federal Rule 11 only takes the Nelsons so far because a federal court may enter sanctions pursuant to state law where a pleading was originally filed in state court but removed to federal court. *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000); *see Brown v. DuPont*, No. 3:09-cv-333-TSL-JCS, 2010 WL 436603, at *2–3 (S.D. Miss. Feb. 2, 2010) (entering sanctions pursuant to the MLAA for frivolous complaint filed in state court and removed to federal court). *Cf. Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998) (finding plaintiff could not be sanctioned under federal Rule 11 for filings in state court). As the Court of Appeals for the Fifth Circuit stated in *Tompkins v. Cyr*:

> Although we have never explicitly addressed this issue, other federal courts have applied state sanctions rules to pleadings filed in state court before removal. We believe that this is appropriate. The federal rules do not apply to filings in state court, even if the case is later removed to federal court. If the state pleading rules did not apply, then nothing would govern the original pleadings in these cases, and a party who filed in bad faith might escape any penalty. In addition, there is no concern in these situations that a court will be forced to choose between two conflicting sets of procedural rules.

202 F.3d at 787 (citations omitted).

---

[4] Plaintiffs never questioned these procedural issues until their motion for reconsideration and have arguably waived the argument. Regardless, the Order should have cited Rule 11 of the Mississippi Rules of Civil Procedure.

10

Mississippi Rule 11 states, "If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees." Miss. R. Civ. P. 11(b). Additionally, the MLAA provides:

> in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 11-55-5(1). "Without substantial justification," means the action, claim, defense or appeal "is frivolous, groundless in fact or in law, or vexatious, as determined by the court." *Id.* § 11-55-3. "Frivolity is defined, for purposes of [the MLAA], just as it is for Rule 11 purposes: a claim is frivolous only when, objectively speaking, the pleader or movant has no hope of success." *Brown*, 2010 WL 436603, at *2 (citing *Leaf River Forest Prods., Inc. v. Deakle*, 661 So. 2d 188, 197 (Miss. 1995)) (internal quotation marks omitted).

In granting an award of attorney's fees and costs under the MLAA, the Court must set forth the reasons for doing so. Miss. Code Ann. § 11-55-7; *Leaf River Forest Prods., Inc.*, 661 So. 2d at 197. The MLAA provides factors for the Court's consideration in granting sanctions:

> (a) The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;

    (b) The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;

    (c) The availability of facts to assist in determining the validity of an action, claim or defense;

    (d) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;

    (e) Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;

    (f) The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;

    (g) The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;

    (h) The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court;

    (I) The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;

    (j) The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and

    (k) The period of time available to the attorney for the party asserting any defense before such defense was interposed.

Miss. Code Ann. § 11-55-7.

  Here, Defendants Tatum and Upshaw correctly filed their motion for attorney's fees pursuant to Mississippi Rule 11 and the MLAA. *See* State Court Record [1-1] at 33–76 (State Court Record). Neither the MLAA nor state Rule 11 requires filing a separate motion for sanctions or a particular notice period prior to filing. After removal, having already answered in the state court, Defendants were not required to file additional pleadings in federal court. *See* Fed. R. Civ. P. 81(c)(2) ("After removal, repleading is unnecessary unless the court orders it."). Instead, Defendants filed notice in the federal court of their prior non-adjudicated motions to dismiss and for attorney's fees. Defs.' Notice of Non-Adjudicated Motions [15] & Ex. A. This was an acceptable procedure at that time, and Defendants now argue that the Court should

simply apply the standards Defendants invoked in their motion if the Order is to be altered or amended.

The Nelsons' original response to the Defendants' motion failed to raise any objection to the procedures Defendants followed. Their Motion to Reconsider appropriately addresses the inapplicability of federal Rule 11, but the Nelsons declined to reply when Defendants explained that the Court should apply Mississippi Rule 11 and the MLAA. This was the Nelsons' second opportunity to respond to those arguments. Absent any response from Plaintiffs on this point, the Court finds that it should alter the Order and apply state law as Defendants originally sought. Applying the state law, the Court finds sanctions are appropriate. As the Court originally observed:

> [T]here is nothing in the transcripts of the two EUOs suggesting that any force or violence was used against the Nelsons or that they held any apprehension that force would be used. Likewise, there was no outrageous conduct. The EUOs were in every sense garden-variety events that were conducted in a professional manner. When the Nelsons' attorneys were forced to defend the claims, they cited no factually relevant legal authority and offered no explanation as to the specific aspects of the EUOs that were supposedly actionable. The claims were an obvious attempt to defeat jurisdiction and were in every way frivolous.

Order [30] at 10. Plaintiffs' new arguments are likewise frivolous for the reasons stated above. So sanctions remain appropriate for bringing claims "without substantial justification" or any hope of success. Miss. Code Ann. §§ 11-55-5, 11-55-3; Miss. R. Civ. P. 11(b).

Considering the relevant factors set forth in the MLAA, § 11-55-7, the Court notes that sanctions are particularly in order because (1) the facts were available and not reasonably in dispute, given the transcript of the events that allegedly form the basis of Plaintiffs' IIED and false imprisonment claims; (2) Plaintiffs had an improper purpose in bringing the claims against Brown, Tatum, and Upshaw, *i.e.* defeating diversity jurisdiction; and (3) Plaintiffs failed to

withdraw the frivolous claims after Defendants' April 6, 2011, letter notifying them of the intent to seek sanctions and persisted with the claims through the motion to remand.  *See, e.g.*, Miss. Code Ann. § 11-55-7(b)–(e), (j).   The other factors are less probative.  Therefore, the Court amends its prior Order to find sanctions against the Nelsons' counsel pursuant to state law, rather than federal Rule 11.[5]

      C.      Amount of Sanctions

In its June 30 Order, the Court ordered Tatum and Upshaw to submit documentation of the fees incurred, failing the parties' stipulation to an amount.  *See* Order [30] at 10.  Defendants Tatum and Upshaw submitted a supplement containing such documentation, to which the Nelsons responded.  Defs.' Supplement [31]; Pls.' Resp. to Order [34]; Defs.' Reply [36].

Tatum and Upshaw's motion sought "attorney's fees and expenses incurred in responding to the First Amended Complaint."  Defs.' Motion to Dismiss, or in the Alternative for Summary Judgment, and for Attorney's Fees and Expenses [15] Ex. A ¶ 13.  In their Response, the Nelsons decline to challenge the hourly rates suggested by Defendants or any particular line item listed in their submission.  The Nelsons do seek to limit the fees to those incurred post-removal, however, arguing that federal Rule 11 attorney's fees cannot be assessed for work that took place while the case was in state court.  Pls.' Resp. to Order [34] at 2.  This argument is half right.  Federal Rule 11 sanctions apply only to filings in federal court and are therefore inapplicable to a complaint

---

[5]The Nelsons also argue that sanctions are not warranted in cases of misjoinder, citing two cases in which this Court found fraudulent joinder but failed to award sanctions against the plaintiffs.  Pls.' Mot. to Reconsider at 7–9 (citing *Addette Dandridge v. Tyson Foods, Inc.*, No. 3:10-cv-575 (S.D. Miss.), and *Ellis v. Wayne Farms, LLC*, 3:10-cv-580 (S.D. Miss.)).  But the *Addette* and *Ellis* cases cited by Plaintiffs were settled—defendants waived their ability to seek sanctions in exchange for dismissal with prejudice—and thus inapposite to whether Plaintiffs' conduct here was sanctionable.  *See Addette*, 3:10-cv-575 at docket entry 25; *Ellis*, 3:10-cv-580 at docket entry 76.

filed in state court and thereafter removed. *Edwards*, 153 F.3d at 245. But, as noted above, the sanctions here for the Nelsons' frivolous complaint should have been imposed under Mississippi Rule 11 and the MLAA, not federal Rule 11. *Tompkins*, 202 F.3d at 786 (finding federal court may apply state sanctions rules to pleadings filed in state court prior to removal); *see* Defs.' Motion to Dismiss, or in the Alternative for Summary Judgment, and for Attorney's Fees and Expenses [15] Ex. A ¶ 13 (seeking sanctions pursuant to Mississippi Rule 11 and the MLAA). Thus, because the Court now correctly imposes state-law sanctions for a state-court filing removed to federal court, the sanctions may include fees incurred prior to removal.

From the invoices attached to Defendants' supplement [31], the Court notes that Mr. Mockbee spent 20.9 hours at $180/hour, and his associate spent 31.1 hours at $135/hour responding to the Nelsons' First Amended Complaint.[6] The Court calculates Mr. Mockbee's fees are $3,762.00 and his associate's fees are $4,198.50, for a total of $7,960.50 in attorney's fees. Adding the $24.39 in costs reflected in the invoices, the total attorney's fees and costs are $7,984.89.

In their Reply in further support of their fees and expenses, Defendants seek an additional award of fees incurred responding to the Nelsons' actions since the Court's June 30, 2011 Order. Defs.' Reply in Support of Supplement to Upshaw, Williams, Biggers & Beckham, LLP and Patrick Tatum's Motion for Attorney's Fees and Expenses [36] at 3–4. Because the Court grants Plaintiffs' Motion to Reconsider in part, the Court declines to award attorney's fees and expenses relating to the briefing of that motion. Finally, the Court declines to award attorney's fees for Defendants' time expended preparing their statement of attorney's fees and expenses incurred.

---

[6]Though Plaintiffs failed to object to a $150 hourly rate for Mr. Mockbee's associates, the Court uses the rate charged in the invoices—$135 per hour.

Therefore, the Court awards a total of $7,984.89 in attorney's fees and expenses to the Tatum, and Upshaw Defendants.

IV.     Conclusion

For the foregoing reasons, the Nelsons' Motion for Reconsideration [32] is granted in part and denied in part.  The Motion is granted in that the Court's June 30, 2011, Order [30] is hereby amended to order sanctions against the Plaintiffs' counsel pursuant to the Mississippi Litigation Accountability Act and Mississippi Rule of Civil Procedure 11 rather than Federal Rule of Civil Procedure 11.  The Motion is otherwise denied.  The Court will enter a judgment of $7,984.89 against Plaintiffs' counsel for attorney's fees and expenses incurred by the Tatum, and Upshaw Defendants.

**SO ORDERED AND ADJUDGED** this the 6th day of February, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE